UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CHAMBERLAIN,<br><br>  Plaintiff,<br><br>  v.<br><br>BAKER HUGHES, A GE COMPANY, LLC,<br><br>  Defendant. | No. 1:19-cv-00831-DAD-JLT<br><br>ORDER GRANTING MOTION FOR APPROVAL OF PAGA SETTLEMENT AGREEMENT<br><br>(Doc. Nos. 18, 19, 20, 21, 22) |

This matter is before the court on plaintiff's unopposed motion for approval of a settlement agreement and dismissal with prejudice of plaintiff's sixth cause of action against defendant pursuant to the Private Attorneys General Act ("PAGA"). (Doc. No. 19.) Pursuant to General Order No. 617 addressing the public health emergency posed by the coronavirus outbreak, on April 22, 2020, the court took the motion under submission to be decided on the papers. (Doc. No. 24.) Having considered the unopposed motion and despite some reservation, the court will approve the settlement agreement.

## BACKGROUND

On May 14, 2019, plaintiff Michael Chamberlain filed this action in Kern County Superior Court asserting five causes of action. (Doc. No. 4-1.) Defendant Baker Hughes, a GE Company, LLC ("Baker Hughes") removed the action to this federal court on June 13, 2019. (*See*

1

1  *generally* Doc. No. 1.)  On July 13, 2019, the parties filed a joint stipulation allowing plaintiff to

2  file a first amended complaint to add a PAGA claim.  (Doc. No. 10 at 2.)  In that stipulation, the

3  parties agreed that plaintiff's non-PAGA claims should proceed under an arbitration agreement

4  without the need for a motion to enforce the arbitration agreement.  (*Id.*)  The parties also agreed

5  that they would proceed to submit the non-PAGA claims to arbitration if the action was not

6  resolved by private mediation by December 31, 2019.  (*Id.*)  Pursuant to the stipulation, the court

7  was to retain jurisdiction as to plaintiff's PAGA claim, lifting the stay at such time that the parties

8  submit a motion to approve settlement and/or the arbitration came to a final resolution.  (*Id.* at 3.)

9  On August 1, 2019, the court gave effect to the stipulation and stayed this action.  (Doc. No. 11.)

10  Plaintiff's first amended complaint alleges that on or about March 26, 2017, plaintiff

11  returned to work as a directional driller at Baker Hughes after being laid off.  (Doc. No. 12 at ¶ 4.)

12  As it pertains to his PAGA claim, plaintiff alleges that PAGA penalties are owed for the

13  following California Labor Code § 226 violations:

> 1) the paystubs do not state an hourly rate for the daily rate, or the car allowance; 2) The paystubs do not state how many hours of work the daily rate or car allowance is for; 3) The paystubs fail to specify the correct overtime, double time, or regular rates of pay; 4) Defendant has failed to preserve the actual paystubs for each pay period in their electronic system.  They have changed paystubs insofar as rates of pay, total compensation, why the compensation was paid, and how many hours the pay was for; 5) in approximately May of 2019 Defendant created a series of bi-weekly paystubs from on or about December 21, 2018 to 5-10-19 which make it virtually impossible to determine what hourly rates are paid, how many hours the sums are paid for, why there are substations of hours and gross sums, the same issues described in 1-4 above but even worse because these stubs show zero hours at regular pay, zero hours for an overtime bonus but gross sums are listed.  The same has been done for other members of the PAGA group at other dates; 6) The paystubs state OT Bonus but fail to specify the number of hours or hourly rate for that itemization.  Because the employer failed to properly provide employee wage deduction statements for each pay period during the statutory time a total of $600 is due per pay period per employee. The employees were paid biweekly; 7) Meal Break penalties do not appear and the general number of regular, overtime, and double time hours worked are incorrect.

26  (*Id.* at ¶ 26.)  Additionally, plaintiff asserts that defendant violated § 226 by failing to pay

27  overtime and double time, and because not all wages were paid as required by statute.  (*Id.* at

28  ¶ 27.)  Plaintiff alleges that the total PAGA violations are worth $1,600.00 in PAGA penalties per

employee per weekly pay period, go back a year before this action was filed, and relate to defendant's nonexempt directional drillers and measurement well drillers who were paid daily bonuses and travel time. (*Id.*) Plaintiff estimates that there are thirty to fifty of these employees in the statutory period. (*Id.*)

On January 9, 2020, the parties engaged in private mediation with employment law mediator Steve Cerveris (Doc. No. 20 at ¶ 6), which resulted in the finalizing of the terms of a PAGA settlement agreement (Doc. No. 20-3 ("the Agreement")) on February 5, 2020 (*id.* at ¶ 4). On April 6, 2020, plaintiff filed this unopposed motion for settlement approval.[1] (Doc. No. 19.) On April 16, 2020, the court directed the parties to submit supplemental briefing providing additional information regarding litigation costs accrued, the reasonableness of the attorneys' fees provision, and the fundamental fairness, reasonableness, and adequacy of the Agreement. (Doc. No. 23.) On April 24, 2020, plaintiff's counsel, attorney Karl Gerber, submitted a supplemental declaration ("the supplemental Gerber declaration") and exhibits. (Doc. No. 25.) Defendant submitted a supplemental brief on April 27, 2020. (Doc. No. 27.)

## THE PROPOSED SETTLEMENT

According to the Agreement, defendant will pay a gross settlement payment of $25,000.00. (The Agreement at ¶ 38.) The gross settlement payment will include (1) claims administration costs of up to $1,000.00 to Phoenix Settlement Administrators; plaintiff's litigation costs of up to $1,000.00, subject to court approval; (3) plaintiff's attorneys' fees of 40 percent of the gross settlement payment, subject to court approval; and (4) the PAGA fund comprising the remaining funds, to be divided 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees. (*Id.* at ¶¶ 25, 38.) If the actual amount of claims administration, litigation costs, and/or attorneys' fees are less or more than the amounts set forth above, those funds shall be added to or subtracted from the PAGA

/////

---

[1] The parties also filed a stipulation for approval of the Agreement on February 14, 2020. (Doc. No. 15.) The court will not give effect to that stipulation, which has been rendered moot by way of this order granting the motion for settlement approval.

3

fund. (*Id.* at ¶ 39.) The total amount of the gross settlement payment shall not exceed $25,000.00. (*Id.*)

The Agreement defines "aggrieved employee(s)" as "Plaintiff and all persons who are or were employed by defendant working in California as non-exempt directional drillers and/or measurement well drillers who were paid daily bonuses and/or travel time from May 10, 2018 through January 9, 2020." (*Id.* at ¶ 1.) The 25 percent that is allocated to the aggrieved employees will be divided by the total number of eligible pay periods for all aggrieved employees, which will yield a pay period amount. (*Id.* at ¶ 42.) The gross amount of each individual PAGA payment shall be calculated by multiplying the number of eligible pay periods worked by the individual aggrieved employee by the pay period amount. (*Id.*) "Eligible pay periods" are the total number of pay periods worked by each aggrieved employee during the covered period—May 10, 2018 to January 9, 2020—in California as a non-exempt directional drillers and/or measurement well drillers. (*Id.* at ¶¶ 6, 9.) The covered claims are as follows:

> all claims, causes of action, and legal theories of relief alleged or which could have been alleged or otherwise raised based on the facts in the FAC . . . or the LWDA Letter for PAGA penalties, including: (1) failure to provide meal and rest breaks or premium payments in lieu thereof (including Labor Code 226.7,. 512, Wage Order 16); (2) failure to pay all wages and the regular rate, overtime rate or double time rate (including Labor Code 558,204,210,215, and 216); (3) failure to timely pay all wages, including upon termination, and waiting time penalties; (4) failure to provide complete and accurate wage statements; (5) failure to indemnify for business expenses; (6) unlawful deductions from wages; (7) unfair business practices (California Business & Professions Code section 17200 et seq.) that could have been premised on the facts, claims causes of action or legal theories described above or on any of the claims, causes of action or legal theories of relief pleaded in the FAC for restitution claims premised on the above-referenced violations; (8) all claims under PAGA that could have been premised on the facts, claims, causes of action or legal theories described above or on any of the claims, causes of action or legal theories of relief pleaded in the FAC; and (9) all damages, penalties, interest, costs (including attorney's fees) and other amounts recoverable under said claims or causes of action as to the facts and/or legal theories alleged or which could have been alleged in the FAC.

(*Id.* at ¶ 5.)

/////

The Agreement provides that, as of the effective date, each aggrieved employee shall fully release and forever discharge defendant from any and all claims, causes of action, demands, rights, liabilities, penalties, attorneys' fees, costs, damages, interest, restitution, and/or liability that were or could have been asserted against defendant in the PAGA lawsuit and/or the PAGA letter to LWDA based on the covered claims. (*Id.* at ¶ 49.) This release extends to all PAGA claims arising from or relating to any and all acts, events and omissions that occurred and/or accrued during the covered period. (*Id.*) Upon the court's approval of the Agreement, aggrieved employees will have no standing to appeal, object or request exclusion from the settlement. (*Id.*)

## LEGAL STANDARD

In 2003, the California Legislature enacted the Private Attorney General Act, California Labor Code §§ 2698 *et seq.*, after declaring: (i) that adequate financing of labor law enforcement was necessary to achieve maximum compliance; (ii) that staffing levels for state labor law enforcement agencies have declined and were unable to keep up with a growing labor market; (iii) that vigorous assessment and collection of civil penalties provides a meaningful deterrent to unlawful conduct; and (iv) that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to seek and recover civil penalties for Labor Code violations. 2003 Cal. Stat. 6629. Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of herself and other current or former employees. Cal. Lab. Code § 2699(a).[2] A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). Accordingly, a judgment in a PAGA action "binds all those, *including nonparty aggrieved employees*, who would be bound by a judgment in an action brought by the government." *Id.* (emphasis added); *see also Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 381 (2014) ("When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent legal right to bring

---

[2] An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

5

the action, a person who is not a party but who is represented by the agency is bound by the judgment as though the person were a party.").

The PAGA statute imposes a number of limits on litigants. First, because a PAGA action functions as a "substitute" for an action brought by the state government, a plaintiff suing under PAGA is limited to recovery of civil penalties only, rather than damages available privately through direct or class action claims. *Id.* Second, to bring an action under PAGA, an aggrieved employee must first provide written notice to the LWDA as well as to the employer. Cal. Lab. Code § 2699.3(a)(1). Third, any civil penalties recovered must be distributed as follows: 75 percent to the LWDA, and the remaining 25 percent to the aggrieved employees. *Id.* § 2699(i).

Finally, a trial court must "review and approve" any settlement of PAGA claims. *Id.* § 2699(*l*)(2).[3] There is no binding authority identifying the proper standard of review of PAGA settlements to be employed by the court. In the class action context, where PAGA claims often also appear, a district court must independently determine that a proposed settlement agreement is "fundamentally fair, adequate and reasonable" before granting approval. *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008). However, this is not a class action, and PAGA claims are intended to serve a decidedly different purpose—namely to protect the public rather than for the benefit of private parties. *See Arias*, 46 Cal. 4th at 986. The LWDA has provided some guidance regarding court approval of PAGA settlements. *See* California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement ("LWDA Comments"), *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul. 29, 2016) (Doc. No. 736 at 2–3.).[4] In that case, where both class action and PAGA claims were covered by a proposed settlement, the LWDA stressed that

/////

---

[3] The proposed settlement must also be submitted to the LWDA at the same time it is submitted to the court. *Id.*

[4] *See also id.* at 3 ("The LWDA is not aware any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action.").

6

> when a PAGA claim is settled, the relief provided for under the PAGA [must] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court [must] evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*Id.*; *see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the same with approval).

Recognizing the distinct issues presented by class actions, this court is nevertheless persuaded by the LWDA's reasoning in *O'Connor* and therefore adopts its proposed standard in evaluating the PAGA-only settlement agreement now before the court. Accordingly, the court will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate[5] in view of PAGA's public policy goals. *See Tenorio v. Gallardo*, No. 1:16-cv-00283-DAD-JLT, 2019 WL 4747949, at *3 (E.D. Cal. Sept. 30, 2019).

## ANALYSIS

### A.     The PAGA Settlement

PAGA's statutory requirements require that 75 percent of the civil penalties recovered by aggrieved employees must be allocated to the LWDA and 25 percent allocated to aggrieved employees.[6] Cal. Lab. Code § 2699(i). As stated above, the Agreement in this case allocates the PAGA fund accordingly. (*See* the Agreement at ¶ 42.) Although the Agreement does not specify the dollar amounts for the PAGA fund's allocations, according to the motion, the PAGA fund will

---

[5] The court's determination as to fairness, reasonableness, and adequacy may involve a balancing of several factors including but not limited to the following: the strength of plaintiffs' claims; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; and the experience and views of counsel. *See Officers for Justice*, 688 F.2d at 625.

[6] As plaintiff notes in his motion, following the filing of the first amended complaint, a decision of the California Court of Appeal clarified that California Labor Code § 558 does not entitle employees to their underlying wages in a PAGA-only action. (Doc. No. 19 at 4.) Accordingly, the Agreement states that all individual PAGA payments will be characterized as entirely comprising penalties, and payments made to plaintiff or the aggrieved employees are not intended to count as wages earned by plaintiff or the aggrieved employees. (Doc. No. 20-3 at ¶¶ 44, 45.)

1    total $13,363.29.  (Doc. No. 19 at 7.)  The claims administrator will pay 75 percent of the PAGA
2    fund, or $10,022.46, to the LWDA, with the remaining 25 percent, or $3,340.83, to be distributed
3    among the aggrieved employees on a pro-rata basis.  (*Id.*; the Agreement at ¶ 42.)  As stated
4    above, the Agreement lists Phoenix Settlement Administrators as the settlement administrator.
5    (The Agreement at ¶ 25; *see also* Doc. No. 20-6.)  According to plaintiff's motion, attorney
6    Gerber has used Phoenix Settlement Administrators for multiple PAGA settlements, and they
7    have delivered timely and economical services.  (Doc. Nos. 19 at 7; 20 at ¶ 6.)  Attorney Gerber
8    also attaches to his declaration the form by which he submitted the proposed settlement to the
9    LWDA.  (Doc. No. 20-4.)

10   Plaintiff's counsel ultimately concludes, albeit by a somewhat circuitous route, that a
11   $200,000.00 PAGA verdict would be a success in this case.  (Doc. No. 19 at 5.)  If the court
12   accepts the $200,000.00 valuation, the $25,000.00 settlement represents a 12 percent of the likely
13   verdict in this case.  (*Id.* at 6.)  In his supplemental declaration, attorney Gerber states that he
14   proposed the settlement amount "based upon the size of the group, the total potential, the
15   defenses, and [his] experience in this area of the law."  (Doc. No. 25 at ¶ 26.)  In its supplemental
16   brief, defendant maintains that it does not concede any liability whatsoever under PAGA in this
17   case and that in its view the settlement amount "is still grossly over-valued" in light of its valid
18   defenses to the underlying claims.  (Doc. No. 27 at 22–23.)

19   Plaintiff's counsel anticipates encountering the following difficulties should this matter
20   proceed.  Counsel states that defendant, who is in the oil business, is at risk of filing for
21   bankruptcy and being unable to pay this settlement given the current state of the oil market.
22   (Doc. No. 25 at ¶ 26.)  Counsel also explains that very few potential litigants were willing to
23   participate in this action.  (*Id.* at ¶ 24.)  He represents that most employees involved in this PAGA
24   group are short-term employees, and adds "that a large part of this group are not California
25   residents who [he] cannot get to come to court in Fresno."  (*Id.*)  In his motion for final approval,
26   plaintiff notes that the Agreement will provide LWDA with penalties while paying a number of
27   affected employees who are not motivated to participate in this suit.  (Doc. No. 19 at 8.)  Plaintiff
28   /////

also observes that the affected employees can still bring individual actions to recover their actual damages because the Agreement only releases PAGA liability. (*Id.* at 6.)

With this understanding, the court will approve the Agreement as it pertains to the award of PAGA penalties. Because of the concrete risk attendant with the pursuit of further litigation in this action and, most critically, the lack of objection from the LWDA despite being provided timely notice of the terms of this proposed settlement, the court finds that the amount offered in settlement of the PAGA claims here weighs in favor of approval. Having reviewed the parties' submissions and the terms of the proposed settlement, the court finds that the settlement amount related to plaintiffs' PAGA claims is fair, reasonable, and adequate in light of the public policy goals of PAGA. *See O'Connor*, 201 F. Supp. 3d at 1132–33 (defining PAGA's goals as including "benefit[ting] *the public* by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance") (emphasis added).

**B.     Attorneys' Fees**

The court now turns to the attorneys' fees provision of the Agreement. The relevant provision of PAGA provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Lab. Code § 2699(g). Calculating attorneys' fees under this provision requires application of the lodestar. *See Steenhuyse v. UBS Fin. Servs., Inc.*, 317 F. Supp. 3d 1062, 1072 (N.D. Cal. 2018); *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (noting that "the fee setting inquiry in California ordinarily begins with the 'lodestar'"); *Margolin v. Reg'l Planning Comm'n*, 134 Cal. App. 3d 999, 1004 (1982) ("California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." ). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A district court should also exclude from the lodestar fee calculation any hours that were

9

not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary. *See id.* at 434; *J & J Sports Prods., Inc. v. Napuri*, No. C 10-04171 SBA, 2013 WL 4428573, at *1 (N.D. Cal. Aug. 15, 2013).

In assessing fee applications, the reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'") (quoting *Chalmers*, 796 F.2d at 1210–11); *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009); *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). Typically, the "relevant legal community" is the forum district[7] and the local hourly rates for similar work should normally be employed. *Gonzalez*, 729 F.3d at 1205; *Prison Legal News*, 608

/////

---

[7] The court recognizes that judges in the Eastern District of California frequently distinguish between the Fresno and Sacramento communities in determining hourly rates. The general rule for awarding attorneys' fee rates, however, is that "the rates of attorneys practicing in the forum *district*" are used. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (emphasis added). The ultimate task of the court is to discern the "prevailing market rates in the relevant community." *See Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). This court has located no authority indicating that hourly rates for attorneys in Sacramento may not be used to guide the court's award of such fees in cases originating in Fresno, particularly in specialized fields of litigation. Again, the typical approach looks to the *district* in which the court sits. *See id.* at 1206 (noting the appropriate rate was "the market rate prevailing in the Central District of California"); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (using the "Northern District of California" as the relevant legal community); *Camacho*, 523 F.3d at 979 (same); *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991) (using the Western District of Washington as the relevant local community), *overruled on other grounds as recognized in Davis v. City & County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992). *But see Vega v. Eatherford U.S. LP*, No. 1:14-cv-01790-JLT, 2016 WL 7116731, at *16 (E.D. Cal. Dec. 7, 2016) (concluding that within the Eastern District of California, the appropriate forum for determining the lodestar rate is the division of the district in which the case is filed) (quoting *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011)). Finally, the undersigned would note that according to the Local Rules of this court, this is not a district court with separate divisions, as many are, but rather is a single district sitting in designated locations for venue purposes. *See* Eastern District of California Local Rule 120.

F.3d at 454; *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994); *Deukmejian*, 987 F.2d at 1405.

The fee applicant bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Napuri*, 2013 WL 4428573, at *2.

Here, 40 percent of the gross settlement payment, or $10,000.00, is allocated for an attorneys' fee award to attorney Gerber under the parties' Agreement. (The Agreement at ¶ 43.) Turning first to the hours expended, the court reiterates that "counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers*, 796 F.2d at 1210. Thus, the court cannot overlook that attorney Gerber failed to submit detailed time records justifying the hours he claimed to have been expended in litigating this case. Attorney Gerber represents that he has spent "well over 110 hours" of his time on the PAGA portion of this case. (The Agreement at ¶ 19.) Because the only record of attorney Gerber's hours expended was his declaration, which provided a narrative and loosely quantified breakdown of expended hours, (*see id.*), the court requested supplemental briefing detailing those hours in order to perform a lodestar calculation. (Doc. No. 23 at 2.) In response, attorney Gerber submitted only partial billing records from his firm. (Doc. No. 26.) Moreover, attorney Gerber concedes that he "did not keep studious billing records on this case," and the list he submitted represents the hours he did track. (Doc. No. 25 at ¶ 17.) He states that his data analysis was "mostly not recorded," and he "cannot find the records of the certified paralegal who assisted in those calculations," leaving the paralegal billings incomplete as well. (*Id.*)

Courts in this circuit "have expressed a 'preference' for contemporaneous records, [but] we have never held that they are absolutely necessary." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115,

11

1121 (9th Cir. 2000) (citing *United States v. 12,248 U.S. Currency*, 957 F.2d 1513, 1521 (9th Cir. 1991)). "[F]ee requests can be based on 'reconstructed records developed by reference to litigation files.'" *Id.* (quoting *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir. 1983)). Therefore, an attorney is "not required to record in great detail how each minute of his time was expended . . . [and] can meet his burden—although just barely—by simply listing his hours and identifying the general subject matter of his time expenditures." *Id.* (finding that a fee application met this "basic requirement" when it "provided a summary of the time spent on a broad category of tasks such as pleadings and pretrial motions (16.5 hours), settlement (4.2 hours), and court appearances (1.5 hours)."). However, it is most certainly the case that "parties are subject to a reduction in the hours awarded when they fail to provide adequate documentation, notably contemporaneous time records." *Apple, Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK PSG, 2012 WL 5451411, at *3 (N.D. Cal. Nov. 7, 2012); *see also, e.g., Hensley*, 461 U.S. at 438 n.13 (noting with approval the district court's 30% reduction in an attorneys' fee award in part due to counsel's failure to keep contemporaneous time records); *Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("The lack of contemporaneous records does not justify an automatic reduction in the hours claimed, but such hours should be credited only if reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation."); *Ackerman v. W. Elec. Co.*, 643 F. Supp. 836, 865 (N.D. Cal. 1986), *aff'd*, 860 F.2d 1514 (9th Cir. 1988) ("The percentage reduction method used by defendant to determine the number of hours reasonably expended has been employed by a number of courts, especially when contemporaneous records are seriously deficient or nonexistent.").

Here, the court concludes that the billing records provided by attorney Gerber are not sufficiently specific to allow for a determination that 110 attorney hours were reasonably expended in prosecuting this matter. Because the records presented by plaintiff's counsel are not sufficiently specific to allow the court to determine if the attorney time allegedly spent was reasonable, the time for which counsel seeks to be compensated will be subject to a reduction. *See Young v. Wolfe,* CV 07-03190 RSWL-AJWx, 2017 WL 3184167, at *5 (C.D. Cal. July 26,

2017) (A 30% reduction in the number of attorney hours reasonably expended found to be appropriate in light of insufficient billing records); *Lehr v. City of Sacramento*, No. 2:07-CV-01565-MCE, 2013 WL 1326546, at *11 (E.D. Cal. Apr. 2, 2013) (finding that a twenty percent reduction in the number of hours would be reasonable, given insufficient detail in the submitted billing documentation). Tallying the numbers reflected on attorney Gerber's billing records, the court calculates a total of 59.17 billable attorney hours. (*See* Doc. No. 26.) The court will therefore use 59.17 hours to calculate the lodestar.

Next, the court must determine the hourly rates to use for the lodestar calculation. According to his declaration, attorney Gerber has been representing employees in labor disputes since November 1993 and wage and hour claims since 1997. (Doc. No. 20 at ¶ 11.) Attorney Gerber avers that he has considerable experience in litigating PAGA claims, and he believes the Agreement is fair to the claimants and the best possible result in the situation presented by this action. (*Id.* at ¶¶ 11, 13.) He contends that he took this case on a contingency basis and has not received any money towards attorney's fees or costs to date. (*Id.* at ¶ 19.)

By dividing the $10,000.00 award by 110 hours, attorney Gerber avers that a 40 percent award of attorneys' fees constitutes an hourly rate of $90.90. (*Id.*) He further contends that his regular overhead is $300.00 per hour, and in several instances, he has been awarded $600.00 per hour when litigating cases in Kern County. (*Id.*) Attorney Gerber has attached several orders to his supplemental declaration, most of which are approvals of class actions settlements or PAGA settlements by judges of the Los Angeles County Superior Court. (*See* Doc. Nos. 25-1, 25-2, 25-4, 25-5.) Many of these orders have awarded attorney Gerber attorneys' fees equaling 40 percent of the settlement amount in the particular case, but only one even mentions an hourly rate for his time. (*See* Doc. No. 25-2 at 11.) Additionally, attorney Gerber has submitted an order regarding a PAGA settlement issued by another judge of this court, but that order also does not address attorney Gerber's appropriate hourly rate. (*See* Doc. No. 25-3.)

In short, none of the attorneys' fee awards and rates applied therein and relied upon by attorney Gerber assist the undersigned in making a lodestar calculation in this case. This is frustrating to the court because, as stated above, the court must determine reasonable hourly rates

1   according to the prevailing market rates in the Eastern District of California.  Without anything
2   else to draw upon, the court will rely on rates awarded in other cases in this district and employ
3   an hourly rate of $400 to calculate the lodestar.  *See, e.g.*, *In re Taco Bell Wage & Hour Actions*,
4   222 F. Supp. 3d 813, 839 (E.D. Cal. 2016) (concluding that appropriate rates in this community
5   are $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350
6   per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for
7   attorneys with less than two years of experience); *Sanchez v. Frito-Lay, Inc.*, No. 1:14-cv-00797
8   AWI, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), *report and recommendation adopted*,
9   No. 1:14-cv-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (awarding rates of
10  $275 to $350 for attorneys with between fourteen and twenty years of experience).

11  Thus, the lodestar fee calculation in this case is $23,668.00.  Plaintiff seeks an award of
12  only $10,000.00, which is significantly below the lodestar amount.  While the seemingly
13  haphazard manner in which the attorneys' fee award application was prepared is not excused, the
14  court nonetheless finds it sufficient to justify the award anticipated by the parties' Agreement.
15  Accordingly, the court will approve the $10,000.00 in attorneys' fees as requested.

16  **C.     Costs**

17  Finally, plaintiff also asks the court to approve the proposed reimbursement to attorney
18  Gerber of already-incurred litigation costs of up to $1,000.00.  The Agreement specifies that
19  "[a]ny attorneys' fees and costs awarded to PAGA Counsel shall fully compensate and reimburse
20  PAGA Counsel for any and all work already performed in connection with the PAGA Lawsuit
21  and all work remaining to be performed in fully and finally resolving the PAGA Lawsuit."  (The
22  Agreement at ¶ 43.)  The submitted litigation costs include the PAGA filing fee, postage, copies,
23  filing fee for this action, certified mail service of PAGA charges on defendant, mandatory
24  electronic filing fees, service of defendant with lawsuit, travel expenses incurred for the
25  mediation held on January 9, 2020, a large meeting room rental, and toll calls.  (Doc. No. 20-5.)
26  The supplemental Gerber declaration expands on some of these costs, clarifying that the
27  "TRAVEL EXPENSES (1-13-20)" were food and mileage costs incurred for the January 9, 2020
28  mediation, which took place over twelve hours and was conducted fourteen miles away from

attorney Gerber's office.  (Doc. No. 25 at ¶ 4.)  The large meeting room rental listed was the room rented for attorney Gerber to meet with a group, which the court will assume was made up of members of the group of aggrieved employees.  (*Id.* at ¶ 3.)  Attorney Gerber's declaration also states that the costs for toll calls were incurred by him in contacting other aggrieved employees.  (*Id.* at ¶ 8.)

Having review attorney Gerber's submitted costs and supplemental declaration, the court approves the Agreement's award of reimbursing litigation costs up to $1,000.00.

## CONCLUSION

For the reasons stated above,

1. Plaintiff's unopposed motion for approval of the PAGA settlement agreement (Doc. No. 19) is granted, and plaintiff's counsel shall receive $10,000.00 in attorneys' fees and a reimbursement of up to $1,000.00 for litigation costs;
2. Plaintiff's sixth cause of action against defendant is dismissed with prejudice;
3. The parties are directed to effectuate all terms of the PAGA settlement agreement (Doc. No. 20-3) and any deadlines or procedures for distribution therein;
4. The stay entered on August 1, 2019 (Doc. No. 11) is hereby lifted; and
5. The parties are directed to submit a joint status report within seven (7) days indicating whether plaintiff's remaining causes of action have been resolved through arbitration.

IT IS SO ORDERED.

Dated:  **July 29, 2020**                              *Dale A. Drozd*
                                                              UNITED STATES DISTRICT JUDGE